This is a suit brought under the provisions of the workmen's compensation statute, Act 20 of 1914, in which the only question at issue is whether the plaintiff has carried the burden of proof as required by law, to show that she sustained the ventral hernia she now complains of as the result of an accident while she was engaged in the course of her employment by the defendant, American Foods, Inc. The trial judge held that she had not and rendered judgment against her rejecting her demand and dismissing her suit. From that judgment she has taken this appeal.
In her petition, plaintiff alleges that she was employed by American Foods, Inc., and while so employed on October 4, 1943 she was working in the warehouse of the corporation, her duties consisting, among other things, of stacking cans of dehydrated sweet potatoes, weighing 17 1/2 lbs. each, preparatory to shipment. She avers that on that morning, at about 10 or 10:30 o'clock, while performing her work, it became necessary for her to reach considerably over her head to get a can from a stack in order to place it in the shipping crate and while doing so the can slipped in her hands and whilst she did not lose her grasp on it, it nevertheless fell and struck her with considerable force in her lower abdominal region, causing a bruise which lasted about a week.
She then alleges that although she suffered great pain and was compelled to stop working for a few minutes, she afterwards resumed her work for the rest of that day and continued working, with some irregularity, until October 28, 1943, on which day she became partially paralyzed and has been unable to do work of any reasonable character since on account of the ventral hernia produced by the blow she sustained in the accident of October 4, 1943.
It is conceded that plaintiff is suffering from a ventral hernia but earnestly disputed that it was caused by an accidental injury such as she has alleged in her petition. Outside of her own testimony and that of Dr. Lionel Bienvenue who first examined her on October 29, 1943, and says that such a blow as she described could possibly have produced the hernia, there is no other corroborating testimony, nor are there any corroborating circumstances found in the record to support her claim. She did produce two witnesses, one of them her daughter, who testified that she showed them a lump in her abdomen and told them about an accident having caused it to appear, but this was not until *Page 440 
the day after it is alleged to have occurred in the case of one of these two witnesses, and not until three or four days later in the case of the other, her daughter. It is significant also that when she was examined by Dr. Bienvenue on October 29, 1943, she did not tell him anything about having had an accident. True, Dr. Bienvenue remembered something she had told him about it on one occasion and that he had transmitted the information she gave him in his preliminary report to the employer's insurance carrier, but plaintiff herself testified that she did not tell him about having had an accident until a week after his first examination when she was again examined by him at the hospital.
Dr. Bienvenue would not express an opinion as to how long the hernia had existed. It appears that plaintiff had had an operation in the abdomen in the region where the hernia shows, some five years before, and whilst he was of the opinion that a hernia doesn't usually develop that long after an operation he did state that if this hernia had existed for two or three years before he saw plaintiff, it could be that it was due to the operation she had had.
Three other employees of the defendant company who were working in the same room with the plaintiff on the day she said she was injured, testified that they were near her and within hearing distance and yet not one of them could recall her having uttered an outcry or making any complaint at all, nor could any recall anything unusual having happened that day.
Notwithstanding the fact that facilities were maintained at the plant to render assistance to workers who might become sick or meet with an accident and that all employees were instructed, through their foremen, to report accidents, plaintiff admits that she never made such report nor did she tell any one at the plant about what had happened to her. The first notice the employer had of her claim came through a letter from her attorneys written some time in January, 1944, almost four months after the accident she relates is said to have occurred. Her excuse for not having reported it to any one at the plant was that she was afraid she might be discharged if it became known that she was disabled and she couldn't afford to be without a job. Several witnesses who had been connected as employees with the plant since it first began operations testified that it was not the policy of the company to discharge any one for failure to report accidents but on the contrary they were encouraged and instructed to do so. Another reason she gives is that she did not think she had been seriously hurt and the accident was not worth reporting. However this is a bit hard to understand in view of the burning sensation and pain she felt at the moment it happened and how greatly she says she suffered while working at irregular intervals during the next three weeks.
[1] From the foregoing analysis of the facts which are well established by the record, we can well understand why the district judge was left with serious doubt about the cause of plaintiff's present condition and why he found that she had failed to support her claim by affirmative proof of the allegations of her petition. Her counsel, while not directly so charging infers that the trial judge was not entirely free of bias in his consideration of her case. This inference is drawn from a rather unusual circumstance which developed while plaintiff was testifying. The record shows that at a certain point she asked the judge if he did not remember an occasion when she had gone to see him at his office during the month of November, 1943, to complain about an alleged assault which had been made on her at that time. It is not clear what her purpose was in thus addressing the court but in the colloquy which followed she was asked by the judge if, at that time, she had not told him that she had suffered a rupture or injury as a result of that assault, to which she answered that she had not. We fail to see how prejudice on the part of the trial judge could be implied from that. Plaintiff herself volunteered to ask him if he remembered the occasion of her visit to his office and this may have refreshed the judge's memory about the conversation that took place between them. When she said that she had not told him that the hernia had been caused by the assault he did not *Page 441 
persist in any way in saying that she had. Had she not brought the matter to his attention as she did, there is no reason we can think of why all of this should have found a place in the record.
It may be that the judge had this in mind during his consideration of the case but we feel certain that he did not decide it on the basis solely of his recollection of that occasion. His written reasons for judgment indicate otherwise.
[2] We agree with counsel for defendants that there was more found in the record in the case of Whitfield v. E. I. Dupont De Nemours Co. Inc., La. App., 23 So.2d 376, on which the claim of the plaintiff in that case could have been supported than there is in this case to support the claim of the plaintiff, and yet, Whitfield's claim was denied.
Plaintiff has failed to point out manifest error in the judgment appealed from and as none appears, it will be affirmed.
Judgment affirmed at the costs of the plaintiff, appellant herein.